IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-60775
Summary Calendar

_____


JUAN ENRIQUE APONTE,

                                              Petitioner,

                          versus

UNITED STATES PAROLE COMMISSION,

                                              Respondent.

_____

Appeal from the United States District Court for the
Northern District of Texas
USDC No. 18USC4106A
_____
June 30, 2000

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

     The appellant, Juan Enrique Aponte, seeks review of the United

States Parole Commission's determination of his release date for

transporting cocaine in Mexico.  Specifically, Aponte argues that

the Parole Commission impermissibly considered his socioeconomic

status in determining his release date.  Consequently, Aponte

asserts, because such a consideration is "forbidden by the

sentencing guidelines," he is entitled to a redetermination of his

release date.  Finding that the Parole Commission did not consider

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Aponte's socioeconomic status in determining his release date, Aponte's request for a redetermination is denied.

I

Aponte, an American citizen, was convicted in the First District Court in San Luis Potosi, San Luis Potosi, Mexico, of transporting 12 kilograms of cocaine. He was sentenced to 165 months imprisonment. Pursuant to a treaty between the United States and Mexico, Aponte was transferred to the United States to serve his prison sentence. Upon arrival in the United States, the United States Parole Commission was required to determine his release date. See 18 U.S.C. § 4106A(b)(1)(A) (West 1999). After a hearing before a Parole Commission examiner, the examiner recommended that Aponte be released after serving a prison term of 135 months.[1] In the examiner's written hearing summary, he enumerated the reasons he believed supported a prison term of 135 months:

> A decision at the top of the applicable guideline range is found warranted because you transported 12 kilograms of cocaine, an amount at the upper end of the 5-15 kilogram range in the sentencing guidelines. A penalty that proportionally reflects the relative seriousness of the offense is therefore in order. Further, you blamed this behavior on others, and your overall record

---

[1] Specifically, the examiner determined that the base offense level was 32, see U.S.S.G. § 2D1.1(a)(3) (1999), and that Aponte's Criminal History Category was a II based on his two prior convictions for criminal assault. The examiner also determined that Aponte was entitled to a two-level reduction for accepting responsibility for his actions. Thus, the examiner determined the offense level to be 30, necessitating a sentence between 108 and 135 months.

(including your record of domestic violence and lack of a solid wage-earning history) indicates that a more lenient penalty would fail to afford adequate deterrence to criminal conduct of a similar nature in the future.

The hearing examiner's recommendation was first reviewed by the Parole Commission's Office of General Counsel. The legal office attorney assigned to the case agreed with the examiner, stating that the relevant factors including Aponte's evidence of his willingness to blame others, his history of domestic violence, and his lack of sufficient wage earning capacity to keep him from going after "easy money," necessitated a sentence at the upper end of the guidelines.[2] Second, the examiner's recommendation was reviewed by a second hearing examiner. This examiner likewise agreed with the recommendation. Thus, the sentencing recommendation was forwarded to the Parole Commission. See 28 C.F.R. § 2.68(h)(6) (1999).

---

[2]Specifically, in a document entitled "Legal Office Review of Transfer Treaty Case," the legal office attorney stated:

[T]his offender seems to have the background and personality type to be almost a more serious risk for renewed drug involvement than his Criminal History Category would indicate. Relevant factors include, his evident willingness to blame others, his history of domestic violence, and the lack of sufficient wage earning capacity to keep him from again going for easy money. (There is only Aponte's unverified claim to have worked ten years in an auto repair garage for minimum wage, an obviously marginal job to which he proposes to return. This is not a promising outlook.) A departure is not warranted, but the risk of an economically marginal, aggressively impulsive man going back into the drug trade would seem to be relatively high.

The Parole Commission, accepting the recommendation of the examiners, imposed a release date of June 9, 2009.  In support of this decision, the Commission stated:

You transported 12 kilograms of cocaine, an amount at the upper end of the 5-15 kilogram range in the sentencing guidelines.  A penalty that proportionally reflected the relative seriousness of the offense is therefore in order.  Further, you blamed this behavior on others, and your overall record (including you record of domestic violence and lack of a solid wage-earning history) indicates that a more lenient penalty would fail to afford adequate deterrence to criminal conduct of a similar nature in the future.

Aponte filed a timely notice of appeal of this sentence determination with our court.

## II

Aponte is before our court today seeking a redetermination of his release date.  He argues that he is entitled to a redetermination of his sentence because the Parole Commission "illegally" considered his socioeconomic status in determining his release date.  See 28 U.S.C. § 994(d) (West 1999)(stating that "[t]he Commission shall assure that the guidelines and policy statements are entirely neutral as to . . . socioeconomic status of offenders"); see also U.S.S.G. § 5H1.10 (1999)(stating the same);

4

United States v. Burch, 873 F.2d 765, 768-69 (5th Cir. 1989). Specifically, Aponte argues he is "being punished more severely because of his socioeconomic status." In support of this contention, Aponte points to various written comments made by members of the Parole Commission who reviewed his case regarding his past employment history and his future wage-earning capacity.

After reviewing the statements relied on by Aponte in support of his claim, we hold that the Parole Commission did not consider Aponte's socioeconomic status in determining his release date.[3] As noted by Aponte in his reply brief, "a defendant's employment history may be an appropriate consideration in determining his

---

[3]As noted by the D.C. Circuit in United States v. Lopez, 938 F.2d 1293 (D.C. Cir. 1991), "socioeconomic" status refers to "an individual's status in society as determined by objective criteria such as education, income, and employment; it does not refer to the particulars of an individual life." Id. at 1297 (emphasis added). The Lopez court went on to state: "[W]hether one is worse off or better off, privileged or underprivileged, rich or poor, should not be relevant in determining one's sentence." Id. (citations omitted).

In the case at bar, the Parole Commission did not sentence Aponte to a longer prison term based on an objective set of criteria used to determine his standing (class) in society. Rather, the Commission considered Aponte's particular characteristics--including his employment history--in crafting a sentence that would deter him from returning to a life of crime. Compare United States v. Stout, 32 F.3d 901, 903 (5th Cir. 1994)(stating that it was improper for the sentencing court to consider the defendant's affluent lifestyle and his 20 years of service as a judge in determining his sentence), with United States v. Tsosie, 14 F.3d 1438, 1441-42 (10th Cir. 1994)(stating that defendant "employment history" and history of providing "economic support [for] his family" were relevant factors supporting the sentencing court's downward departure based on its belief that the defendant's actions were "aberrational"); United States v. Jaqmohan, 909 F.2d 61, 65 (2d Cir. 1990)(stating the defendant's "employment record" supported a downward departure).

5

sentence within the guideline range."  See 18 U.S.C. § 3661 (West 1999)(stating the general proposition that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence");  U.S.S.G. § 1B1.4 (1999).  In the case at bar, the Commission, in an attempt to craft a punishment to deter Aponte from committing future criminal acts, considered numerous relevant factors--including his job skills and his potential to gain future employment.

In addition to Aponte's employment history, the Commission considered the amount of cocaine he was transporting, his unwillingness to accept responsibility for his actions, and his overall record, including his convictions for assault, in determining his sentence.  All of these factors were relevant to the Commission's attempt to formulate a punishment to deter Aponte from committing a similar crime following his release.  See United States v. James, 46 F.3d 407, 407 (5th Cir. 1995)(citing 18 U.S.C. § 3553(a) (West 1999))(stating that in determining a sentence, the court shall consider: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for punishment, deterrence, public protection and rehabilitation . . . ")(emphasis added);  United States v. Lara-Vilasquez, 919 F.2d 946, 956 (5th Cir. 1990)(quoting U.S.S.G. § 1B1.4 (1999))(stating that "the Sentencing Guidelines

specifically states that in determining the sentence to impose within the Guideline range, 'the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law'").  Consequently, the Commission did not err in considering Aponte's employment history and earning capacity in determining his release date.

### III

Aponte's request for a redetermination of his release date is

D E N I E D.