# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 11-3563

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Leo William Anderson, also known | * | |
| as Faheim, | * | |
| | * | |
| Defendant/Appellant. | * | |

———————

Submitted: June 13, 2012
Filed: July 25, 2012

———————

Before MURPHY and MELLOY, Circuit Judges, and KYLE,[1] District Judge.

———————

MURPHY, Circuit Judge.

While serving a sentence of 148 months for conspiracy to distribute crack cocaine, Leo Anderson moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) based on a retroactive amendment to the sentencing guidelines. He sought a sentence 29% below the bottom of his amended guideline range of 168 to 210 months. The

———————

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

district court[2] granted a reduction approximately 20% below the amended guideline range to comply with U.S.S.G. § 1B1.10, the Sentencing Commission's policy statement governing the sentence reduction process. Anderson appeals, arguing that § 1B1.10 is contrary to the Sentencing Reform Act and unconstitutional. We affirm.

I.

Anderson pled guilty in 2004 to conspiracy to distribute at least 50 grams of crack cocaine. See 21 U.S.C. §§ 841(a)(1), 846. His guideline range was 262 to 327 months imprisonment, but the government moved for a downward departure based on Anderson's substantial assistance. See U.S.S.G. § 5K1.1. The district court granted the motion and sentenced him to 210 months, 20% below the bottom of his guideline range. Because Anderson had been sentenced under a mandatory guideline system, his case was remanded to the district court for resentencing in light of United States v. Booker, 543 U.S. 220 (2005). See United States v. Anderson, 155 F. App'x 244, 245 (8th Cir. 2005) (per curiam). The district court resentenced him to 185 months, varying downward due to Anderson's attempts to turn his life around while in prison. This resulted in a sentence approximately 29% below the bottom of the guideline range.

In 2007 the Sentencing Commission reduced the base offense levels for crack cocaine offenses, and these changes were made retroactive in 2008. See U.S.S.G. App'x C (Nov. 2011) amends. 706, 713. Anderson moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), which provides the district court with discretionary authority to reduce a defendant's term of imprisonment if the original sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements

---

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

issued by the Sentencing Commission." Anderson's amended guideline range was determined to be 210 to 262 months. The district court granted the motion and reduced Anderson's sentence 29% below the bottom of his amended guideline range, the same percentage he had received earlier as a result of a downward departure and variance. This led to imposition of a 148 month sentence.

After passage of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, the Commission again reduced the base offense levels for crack cocaine offenses and made its changes retroactive. See U.S.S.G. App'x C (Nov. 2011) amends. 750, 759. It also made changes to U.S.S.G. § 1B1.10, the policy statement governing motions for sentence reductions under § 3582(c)(2). Prior to the November 2011 version of the guideline manual, § 1B1.10 provided that a district court could reduce a sentence below the amended guideline range if the defendant had originally received a below guideline sentence. U.S.S.G. § 1B1.10(b)(2)(B) (2010). Any reduction below the amended guideline range was to be "comparabl[e]" to the amount that the original sentence fell below the defendant's initial guideline range. Id. At that time the policy statement cautioned that if the defendant's original below guideline sentence had been due to a downward variance under 18 U.S.C. § 3553(a) and the Booker decision, "a further reduction generally would not be appropriate." U.S.S.G. § 1B1.10(b)(2)(B) (2010).

In response to the changes made by the Fair Sentencing Act, the Commission requested comments on whether it should "amend § 1B1.10 to provide guidance to the courts on the procedure to be used when applying an amendment retroactively." 76 Fed. Reg. 24960, 24973 (May 3, 2011). The Commission also held a public hearing on June 1, 2011 regarding the matters disclosed for comment.[3] It then amended § 1B1.10, effective November 1, 2011, to provide that a district court may

---

[3] A transcript of the public hearing is available at, http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings /20110601/Hearing_Transcript.pdf.

only reduce a defendant's sentence below the bottom of the amended guideline range if the reduction would be "comparabl[e]" to one given earlier for providing "substantial assistance to authorities."  U.S.S.G. § 1B1.10(b)(2)(B).

In September 2011 Anderson requested appointment of counsel to move for a sentence reduction in response to the guideline changes made as a result of the Fair Sentencing Act.  After he filed the motion, his probation officer submitted a memorandum to the court suggesting that Anderson's new guideline range would be 168 to 210 months and that a 29% reduction comparable to his earlier one would lead to a sentence of 119 months.  The memorandum recommended that Anderson's sentence be reduced to the statutory minimum of 120 months.  See 21 U.S.C. § 841(b)(1)(A). The government responded in November 2011 that under the amended version of § 1B1.10, Anderson was only entitled to a sentence reduction 20% below the bottom of his amended guideline range, a percentage reduction which corresponded to the prior departure he had received for providing substantial assistance to authorities.  Anderson was appointed counsel who replied, arguing that the new version of § 1B1.10 is contrary to the Commission's statutory authority and is unconstitutional.

The district court reduced Anderson's sentence to 134 months, 20% below the bottom of the amended guideline range, indicating that it made this reduction because it was comparable in magnitude to the downward departure Anderson had initially received for providing substantial assistance.  It then decreased the sentence an additional three months to account for time Anderson had spent in state custody and imposed a sentence of 131 months.

II.

Anderson appeals, renewing the arguments he made in the district court. We ordinarily review a district court's reduction of a sentence under § 3582(c)(2) for an abuse of discretion, see United States v. Burrell, 622 F.3d 961, 964 (8th Cir. 2010), but our review here is de novo because Anderson is challenging the validity of the applicable sentencing policy statement on constitutional and statutory grounds. See United States v. Nash, 627 F.3d 693, 696 (8th Cir. 2010) (constitutional questions reviewed de novo); United States v. Galloway, 976 F.2d 414, 419 (8th Cir. 1992) (en banc) (statutory authority of the Commission reviewed de novo).

A.

Anderson first contends that the Commission exceeded its statutory authority by limiting sentence reductions below the bottom of the amended guideline range to defendants who had provided substantial assistance to authorities. He argues that by this limitation, the Commission has required a sentence reduction judge to alter the structure of an original sentence by preventing her from applying other types of downward departures and variances imposed at the initial sentencing. He urges that the Commission lacks authority to interfere with the structure of the district court's sentence in this way.

We find Anderson's arguments unconvincing. The Supreme Court has indicated that a sentence reduction under § 3582(c)(2) is not a "plenary resentencing"; rather, it operates as "a narrow exception to the rule of finality" that "permits a sentence reduction within the narrow bounds established by the Commission." Dillon v. United States, 130 S. Ct. 2683, 2692, 2694 (2010). Congress has granted the Commission authority to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment . . . may be reduced." 28 U.S.C. § 994(u). It has directed the Commission to make such specifications in the form of

-5-

policy statements, id. § 994(a)(2)(C), and indicated that district courts may only grant a sentence reduction if it is "consistent" with such policy statements, 18 U.S.C. § 3582(c)(2).

The Commission's applicable policy statement issued in 2011 fell well within its statutory authority. By limiting reductions below the amended guideline range to an amount comparable to an earlier reduction for substantial assistance, the Commission has specified the "circumstances and by what amount" a sentence may be reduced. 28 U.S.C. § 994(u). The statutory framework does not require the Commission to make all downward departures and variances applied to the original sentence available when creating a basis for sentencing reduction.

B.

We next turn to Anderson's argument that the policy statement is unconstitutional because it violates the nondelegation doctrine and separation of powers. Under the nondelegation doctrine, Congress may not delegate its legislative power unless it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." Mistretta v. United States, 488 U.S. 361, 372 (1989) (second alteration in original) (citation omitted). Anderson acknowledges that in Mistretta the Supreme Court upheld Congress's creation of the Sentencing Commission against a nondelegation challenge. See id. at 374. He contends, however, that the intelligible principles recognized in that case do not guide the Commission in crafting policy statements like § 1B1.10 which governs the sentence reduction process.

We reject the argument that Congress failed to supply intelligible principles to guide the Sentencing Commission's work. Congress directed that the Commission use policy statements to govern the sentence reduction process and that those policy statements should "further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 28

-6-

U.S.C. § 994(a)(2). Contained within § 3553(a)(2) are several directives, such as the need for a sentence to "afford adequate deterrence" and "protect the public from further crimes of the defendant." By instructing the Commission to consider the § 3553(a)(2) factors when creating policy statements, Congress has laid down an intelligible principle to guide its work. This conclusion is consistent with that of other circuits to have addressed similar challenges. See, e.g., United States v. Horn, 679 F.3d 397, 404–05 (6th Cir. 2012); United States v. Garcia, 655 F.3d 426, 434–35 (5th Cir. 2011).

C.

Anderson's second constitutional argument is that the use of policy statements instead of guidelines to govern the sentence reduction process violates separation of powers principles. He correctly points out that policy statements, unlike guidelines, are not subject to either the notice and comment requirements of the Administrative Procedure Act (APA) or the requirement that they be submitted to Congress for review at least 180 days prior to their effective date. See 28 U.S.C. § 994(x), (p). Anderson urges that in the absence of these requirements the Commission violates the separation of powers because it usurps legislative power and acts without political accountability.

In Mistretta, the Supreme Court upheld the Commission's powers against a separation of powers challenge. The inquiry in that case focused on whether the Commission had unconstitutionally expanded the judiciary's power by "uniting within the Branch the political or quasi-legislative power of the Commission with the judicial power of the courts." 488 U.S. at 393. The Court explained in Mistretta that there was no constitutional problem because the Commission does not act as a court and is not controlled by the judiciary. Id. Rather, the Commission has among its members individuals who are not part of the judiciary, all are subject to presidential removal, and their power is limited by Congress's ability to revoke or amend

guidelines "at any time." <u>Id.</u> at 393–94. The Commission's placement within the judicial branch also does not improperly aggrandize the power of the judiciary because sentencing has historically been the province of that branch. <u>See id.</u> at 395.

These characteristics of the Commission apply whether it is issuing a guideline or a policy statement.

It is true that in its separation of powers analysis, the <u>Mistretta</u> Court also discussed two factors that apply to guidelines but not to policy statements: a 180 day waiting period prior to enactment of a guideline to provide for Congressional review and APA notice and comment requirements. <u>See</u> 488 U.S. at 394. Significantly, Congress retains oversight over the Commission's work quite apart from the 180 day waiting period for a guideline to become effective because it can modify or override the Commission's policy statements. <u>See United States v. Fox</u>, 631 F.3d 1128, 1131 (9th Cir. 2011). As for APA notice and comment procedures, this requirement was only one of many factors which the Court took into account in <u>Mistretta</u> when concluding that the Commission posed no separation of powers problem. These additional checks on the Commission are sufficient to ensure that its powers are not entangled with those of the judiciary so as to create a separation of powers problem. <u>Cf.</u> <u>Horn</u>, 679 F.3d at 406–07 (reaching same conclusion).

Furthermore, the Commission's own rules provide that when crafting policy statements, it "endeavor[s]" to provide opportunities for public input "comparable" to those provided when making guidelines. <u>See</u> U.S. Sent'g Comm'n R. Prac. & Proc. 4.3 (2007). That is exactly what happened here where the Commission solicited public comment regarding changes to § 1B1.10 and held a public hearing on the matters disclosed for comment. <u>See</u> 76 Fed. Reg. 24960, 24973-74 (May 3, 2011). Anderson has thus not shown a separation of powers problem in the Commission's recent revision to § 1B1.10.

## III.

Accordingly, we affirm the judgment of the district court.

_____