# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1226

_____

United States of America

*Plaintiff - Appellee*

v.

Willie Christopher Johnson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 21, 2012
Filed: January 16, 2013

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Willie Johnson of three federal narcotics crimes. Johnson appeals the district court's[1] partial denial of his 18 U.S.C. § 3582(c)(2) motion for a sentence modification. The district court reduced Johnson's prison sentence

_____

[1] The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

from 324 to 210 months because the United States Sentencing Commission (Commission) retroactively amended the crack cocaine sentencing guidelines. The district court refused to reduce Johnson's sentence further based on an earlier, non-retroactive amendment to the United States Sentencing Guidelines (U.S.S.G. or Guidelines). Johnson contends this refusal is neither authorized by statute nor permitted by the Constitution. Johnson is mistaken. We affirm.

## I.    BACKGROUND

There is no factual dispute, and we have already set forth the facts of this case in our decision affirming Johnson's conviction. See United States v. Johnson, 439 F.3d 947, 949-51 (8th Cir. 2006). Here, we recount only those facts relevant to Johnson's present appeal.

When the district court originally sentenced Johnson in 2005, Johnson's criminal history category was VI—the highest level—based in part on the short length of time between his release from prison for an earlier crime and his commission of the crimes for which he is now imprisoned. At that time, § 4A1.1 added one or two points to a defendant's criminal history score if fewer than two years had passed between his release from prison on a prior charge and his commission of the instant offense. See U.S.S.G. § 4A1.1(e) (2005). On November 1, 2010, the Commission enacted Amendment 742, which eliminated these recency points from § 4A1.1. The Commission did not provide for retroactive application of Amendment 742 in its policy statement. See U.S.S.G. § 1B1.10(c); U.S.S.G. app. C., amend. 742. The parties agree that if Amendment 742 applied to Johnson, his criminal history category would fall one level.

On November 1, 2011, the Commission enacted Amendment 750, which reduced the offense levels for certain crack cocaine sentences under U.S.S.G. § 2D1.1. See U.S.S.G. app. C, amend. 750. Parts A and C of this amendment were retroactive. See U.S.S.G. app. C, amend. 759. Applied to Johnson, this

amendment reduced his base offense level from 32 to 28, resulting in a new total offense level of 32. This total offense level yields an advisory range of 210 to 262 months when combined with a criminal history category of VI and 188 to 235 months when combined with a criminal history category of V.

On December 5, 2011, Johnson moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c). Johnson asked the district court to reduce his prison sentence from 324 months to 188 months based on Amendments 742 and 750. Although Johnson recognized the Commission had not explicitly made Amendment 742 retroactive, Johnson argued the Commission's retroactivity decision should not bind the district court for two reasons. First, Johnson asserted that failing to give Amendment 742 retroactive effect would violate his Fifth Amendment right to due process. Second, Johnson asserted "the Commission exceed[ed] its statutory authority by" failing to give the district court discretion to decide whether Amendment 742 should apply retroactively.

The district court apparently disagreed and reduced Johnson's total offense level from 36 to 32 in accordance with Amendment 750 and left Johnson's criminal history category unchanged. In accordance with the amended guideline range of 210 to 262 months, the district court reduced Johnson's sentence to 210 months. Johnson appeals.

## II. DISCUSSION

We review a district court's decision to modify a sentence under § 3582(c)(2) for an abuse of discretion, but we review Johnson's constitutional and statutory challenges *de novo*. See United States v. Anderson, 686 F.3d 585, 589 (8th Cir. 2012).

Johnson challenges the Commission's decision not to make Amendment 742 retroactive on four grounds: (1) Congress has not authorized the Commission

to issue binding policy statements, (2) Congress's delegation of such authority to the Commission violates the Non-Delegation and Separation of Powers doctrines, (3) the Commission's decision not to apply Amendment 742 retroactively was arbitrary and capricious, and (4) the Commission's decision deprived him of due process. Because our decision in Anderson forecloses Johnson's first two arguments, we proceed directly to his third and fourth arguments. See id. at 589-91 (holding the Commission's power to issue binding policy statements is authorized by statute and consistent with the Non-Delegation and Separation of Powers doctrines); see also United States v. Harris, 688 F.3d 950, 957-58 (8th Cir. 2012).[2]

## A.    Arbitrary and Capricious

Arguing the Commission arbitrarily and capriciously decided not to apply Amendment 742 retroactively, Johnson asks us to "disregard" the Commission's decision. Johnson does not specify the source of our purported power to do so, but we infer he would have us rely on our authority under the Administrative Procedure Act (APA), 5 U.S.C. § 500 et seq., to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2). Of course, we may exercise that authority only within the limits drawn by statute. Those limits do not encompass this case.

The Commission is "an independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a). By its own terms, judicial review under the APA applies only to agencies, which include "each authority of the Government of the United States, . . . but [do not include] . . . the courts of the United States." 5 U.S.C. § 701(a)-(b)(1)(B). Given this exclusion, we expect

---

[2]Our decision in Anderson is consistent with the decisions of other circuits addressing these issues. See, e.g., United States v. Berberena, 694 F.3d 514, 523-26 (3d Cir. 2012); United States v. Horn, 679 F.3d 397, 401, 404-09 (6th Cir. 2012); United States v. Garcia, 655 F.3d 426, 434-35 (5th Cir. 2011).

-4-

neither the judicial branch as a whole nor any one of its component parts is an "agency" within the meaning of the APA.[3]  But we need not determine whether our branch is categorically excluded from the APA's definition of "agency" because Congress plainly excluded the Commission from that definition.

When it established the Commission, Congress explicitly subjected one piece of the Commission's activities—the "promulgation of guidelines pursuant to [28 U.S.C. § 994]"—to the APA's notice-and-comment provisions, see 5 U.S.C. § 553.  28 U.S.C. § 994(x).  In so doing, Congress implicitly exempted the Commission from the rest of the APA—even if it would otherwise apply.  See S. Rep. No. 98-225, at 180-81 (1983) reprinted in 1984 U.S.C.C.A.N. 3182, 3363-64 ("[28 U.S.C. § 994(x)] is an exception to the general inapplicability of the [APA] . . . to the judicial branch. . . . It is . . . not intended that the guidelines be subject to appellate review under [the judicial review provisions of the APA, including § 706].").  In reaching this conclusion, we reference the legislative history of the Sentencing Reform Act of 1984 (SRA), Pub. L. No. 98–473, 98 Stat. 1837 (codified as amended in scattered sections of 18 U.S.C. and 28 U.S.C. §§ 991-98), but rely on our steadfast canons of statutory construction.

---

[3]See, e.g., Wash. Legal Found. v. U.S. Sentencing Comm'n, 17 F.3d 1446, 1449-50 (D.C. Cir. 1994); United States v. Tapert, 993 F.2d 1548, at *9 (6th Cir. 1993) (unpublished per curiam); United States v. Frank, 864 F.2d 992, 1013 (3d Cir. 1988) ("Housing the Commission in the judicial branch has the effect, as a matter of statutory interpretation, of exempting it from certain statutes which would otherwise apply"); In re Fid. Mortg. Investors, 690 F.2d 35, 38 (2d Cir. 1982) ("If legislative history has any significance at all, it is clear that Congress intended the entire judicial branch of the Government to be excluded from the provisions of the [APA]."); Wacker v. Bisson, 348 F.2d 602, 608 n.18 (5th Cir. 1965) ("Th[e] legislative history indicates that the APA excludes the entire judicial branch of the government."); cf. 5 U.S.C. § 701(b)(1) ("'[A]gency' . . . does not include . . . the Congress."); FCC v. Fox Television Stations, Inc., 556 U.S. 502, 525 (2009) ("The [APA], after all, does not apply to Congress *and its agencies*." (emphasis added)).

Other circuits have reached a conclusion consistent with ours based on "the principle of *inclusio unius est exclusio alterius*." United States v. Lopez, 938 F.2d 1293, 1297 (D.C. Cir. 1991); see also Andrade v. U.S. Sentencing Comm'n, 989 F.2d 308, 309 (9th Cir. 1993) (per curiam). This "familiar maxim," United States v. Mangano, 299 F. 492, 494 (8th Cir. 1924), means "the expression of one thing excludes others not expressed," Watt v. GMAC Mortg. Corp., 457 F.3d 781, 783 (8th Cir. 2006). We agree with the Lopez and Andrade courts: Congress's inclusion of only the APA's notice-and-comment requirements in the SRA is an exclusion of the APA's other provisions. But we do not rely solely on our reluctance to "assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply . . . when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." Jama v. ICE, 543 U.S. 335, 341 (2005).

We also consider the presumption against surplusage to be decisive. It is "a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404 (2000) (quoting United States v. Menasche, 348 U.S. 528, 538-39 (1955) (internal quotation marks omitted). Johnson and the government present us with two competing statutory interpretations. Only the government's interpretation of the SRA "*avoids* surplusage." Freeman v. Quicken Loans, Inc., 566 U.S. ___, ___, 132 S. Ct. 2034, 2043 (2012). Johnson's interpretation, by contrast, renders the entirety of 28 U.S.C. § 994(x) "'superfluous [and] insignificant,'" Market Co. v. Hoffman, 101 U.S. 112, 115 (1879) (quoting 4 Matthew Bacon, Abridgment *645). If the APA applies independently, then the notice-and-comment requirement of 5 U.S.C. § 553 would apply regardless of 28 U.S.C. § 994(x). We decline Johnson's invitation to adopt a reading of the SRA that "emasculate[s] an entire [sub-]section." Menasche, 348 U.S. at 539.

Because Congress has not authorized us to "hold unlawful and set aside" action by the Commission "found to be . . . arbitrary, capricious, [or] an abuse of discretion," 5 U.S.C. § 706(2), we reject Johnson's argument that we may "disregard" the Commission's non-retroactivity determination as arbitrary and capricious.

### B.    Due Process

That Congress has not authorized us to review the Commission's policy statements under the APA does not necessarily mean the Commission's statements are wholly unreviewable. If the Commission issued an irrational policy statement, giving effect to that statement could violate due process. See, e.g., Chapman v. United States, 500 U.S. 453, 465 (1991) ("[A] court may impose[] whatever punishment is authorized by statute for [an] offense, . . . so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." (internal citations omitted)). But the constitutional right to due process is only implicated if a "deprivation[] of life, liberty or property . . . is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).[4] Johnson, arguing the Commission's non-retroactivity determination violates his Fifth Amendment right to due process, skips over this "threshold question," id. We do not presume a discretionary sentence modification creates "a constitutionally protected liberty interest." Id.

A liberty interest protected by the Fifth Amendment may arise from two sources: the Constitution, see, e.g., id., or a federal statute, see, e.g., Evans v. Dillahunty, 662 F.2d 522, 525-26 (8th Cir. 1981) (holding a federal statute created a liberty interest protected by the Due Process Clause of the Fifth Amendment);

---

[4]Although Wilkinson involved the Fourteenth Amendment Due Process Clause and Johnson invokes the Fifth Amendment right to due process, "[t]o suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection," Malinski v. New York, 324 U.S. 401, 415 (1945) (Frankfurter, J., concurring).

cf., e.g., Swarthout v. Cooke, 562 U.S. ___, ___, 131 S. Ct. 859, 862 (2011) (per curiam) (recognizing a liberty interest created by state law was protected by the Fourteenth Amendment's Due Process Clause); Mathews v. Eldridge, 424 U.S. 319, 332 (1976) ("[T]he interest of an individual in continued receipt of [Social Security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment.").

Johnson cannot seriously point to the Constitution as the source of his ostensible liberty interest because "the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled." Dillon v. United States, 560 U.S. ___, ___, 130 S. Ct. 2683, 2692 (2010). There is "no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments." Id. Therefore, if the liberty interest Johnson maintains is in a § 3582(c)(2) sentence modification exists, Johnson must identify a statutory source.

Johnson fails to specify a statutory source for any liberty interest. The only authority to reduce a prison term based upon a subsequent amendment to the Guidelines is § 3582(c)(2) itself, which is a discretionary exception to the rule that a district "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Far from creating a substantive right to a modification, "§ 3582(c)(2) represents a congressional act of *lenity*." Dillon, 560 U.S. at ___, 130 S. Ct. at 2692 (emphasis added). Section 3582(c)(2) is "limited [in] scope and purpose," and "proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt." Id.

The rationale for that holding applies equally to the Fifth Amendment right to due process. Because "a § 3582(c)(2) proceeding do[es] not serve to increase the prescribed range of punishment," id., no "deprivation[] of . . . liberty . . . is at

-8-

stake," <u>Wilkinson</u>, 545 U.S. at 221. Johnson is already incarcerated. His liberty is already deprived by virtue of a sentencing which gave him all the process the Constitution required. <u>See</u> <u>Johnson</u>, 439 F.3d at 947. No new deprivation of liberty can be visited upon him by a proceeding that, at worst, leaves his term of imprisonment unchanged. "Judge Henry Friendly cogently noted that 'there is a human difference between losing what one has and not getting what one wants.'" <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 10 (1979) (quoting Henry J. Friendly, <u>Some Kind of Hearing</u>, 123 U. Pa. L. Rev. 1267, 1296 (1975)). A § 3582(c)(2) proceeding offers no prospect of "exceeding the sentence" in any way, let alone "in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). By its plain terms, § 3582(c)(2) permits district courts to do just one thing: "*reduce* the term of imprisonment." 18 U.S.C. § 3582(c)(2) (emphasis added).

Neither can Johnson plausibly claim § 3582(c)(2) "create[d] a legitimate expectation," <u>Greenholtz</u>, 442 U.S. at 9, of a sentence reduction. Unlike the mandatory language in the federal parole statute[5] that created a "substantial expectancy of parole" in <u>Evans</u>, 662 F.2d at 526, or in the state parole statute[6] that created an "expectancy of release" in <u>Greenholtz</u>, 442 U.S. at 12, the language in § 3582(c)(2) is doubly discretionary.

First, Congress authorized a § 3582(c)(2) sentence reduction only if it "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Nothing in the SRA *requires* the

---

[5]<u>See</u> Parole Commission and Reorganization Act, Pub. L. No. 94–233, 90 Stat. 219 (1976) (codified at 18 U.S.C. §§ 4201-18), <u>repealed</u> <u>by</u> Pub. L. No. 98–473, tit. 2, § 218, 98 Stat. 2027 (1984).

[6]<u>See</u> Neb. Rev. Stat. § 83-1,114(1) (1976).

Commission to issue a policy statement making any retroactive amendment to the Guidelines. The SRA merely *permits* the Commission to do so:

> *If* the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense *may* be reduced.

28 U.S.C. § 994(u) (emphasis added). There are at least two ways the Commission could, consistent with this delegation of discretion, never issue a retroactive amendment to the Guidelines. Most obviously, it could never "reduce[] the term of imprisonment recommended by the guidelines." Id.; see also 28 U.S.C. § 994(p) ("The Commission . . . *may* promulgate . . . amendments to the guidelines." (emphasis added)). Or the Commission could do what it did here: issue an amendment and specify that it would not apply retroactively. See U.S.S.G. § 1B1.10.

Second, even if the Commission issues a retroactive amendment, § 3582(c)(2) does not require a district court to grant a sentence modification in any particular case. On the contrary, § 3582(c)(2) merely *permits* a district court to reduce an otherwise final "term of imprisonment" *if* the Commission has both amended a Guidelines range *and* made the amendment retroactive. 18 U.S.C. § 3582(c)(2). Each district court "determine[s] whether, *in its discretion*, [a] reduction . . . is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at ___, 130 S. Ct. at 2692 (emphasis added). "Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005).

It is true a district court's exercise of discretion under § 3582(c)(2) arguably is cabined by "substantive predicates," Hewitt v. Helms, 459 U.S. 460, 472 (1983), abrogated in part on other grounds by Sandin, 515 U.S. at 483, which the Supreme Court has sometimes considered a prelude to due process protection, see, e.g., Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 463-64 (1989). At least in the context of prison regulations, the Supreme Court has retreated from Hewitt's formulaic approach to due process. See Sandin, 515 U.S. at 482-84; Kennedy v. Blankenship, 100 F.3d 640, 642 (8th Cir. 1996). We think Sandin's "focus" on "the nature of the deprivation," 515 U.S. at 481, is more appropriate in the context of this case, although we have occasionally applied Hewitt in certain contexts even after the Supreme Court decided Sandin. See, e.g., Snodgrass v. Robinson, 512 F.3d 999, 1003 (8th Cir. 2008) (quoting a pre-Sandin case, Bagley v. Rogerson, 5 F.3d 325, 328-29 (8th Cir. 1993), for the proposition that "'no liberty interest . . . is created unless the state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state officials'"); Morgan v. Rabun, 128 F.3d 694, 699 (8th Cir. 1997) ("Because Sandin does not apply, we return to the Hewitt analysis."). In any event, the absence of mandatory language in § 3582(c)(2) means Johnson's due process claim is defeated even under Hewitt. Because § 3582(c)(2) "stop[s] short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met," it is "not worded in such a way that" Johnson "could reasonably expect to enforce [it] against" either the Commission or the district court. Thompson, 490 U.S. at 464-65.

The district court, by complying with § 3582(c)(2) and the Commission's non-retroactivity determination, did not violate Johnson's Fifth Amendment right to due process because § 3582(c)(2) proceedings do not implicate a "constitutionally protected liberty interest," Wilkinson, 545 U.S. at 221.

## III. CONCLUSION
We affirm.

---

-11-