# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 12-3253

———————————————

United States of America

*Plaintiff - Appellee*

v.

LaQuan Dwayne Carter

*Defendant - Appellant*

———————

Appeal from United States District Court
for the District of Minnesota - St. Paul

———————

Submitted: October 21, 2013
Filed: November 6, 2013
[Unpublished]

———————

Before RILEY, Chief Judge, MURPHY, and COLLOTON, Circuit Judges.

———————

PER CURIAM.

LaQuan Carter was convicted of conspiracy to distribute crack cocaine, conspiracy to possess firearms in relation to drug trafficking, distribution of crack

cocaine, and violent crime in aid of racketeering. The district court[1] sentenced him to 405 months imprisonment, at the top of the sentencing guideline range. After the guidelines were amended to reduce the base offense levels for crack cocaine, Carter brought this motion under 18 U.S.C. § 3582(c). He sought a reduced sentence of 210 months, which was within the retroactively recommended range of 210 to 262 months. The district court reduced Carter's sentence to 365 months, and Carter appeals. We affirm.

LaQuan Carter was an enforcer for the "Family Mob," a street gang of some two dozen members that sold crack cocaine at the intersection of Chicago and Franklin Avenues in Minneapolis. At trial witnesses testified that Carter urged his fellow conspirators to organize themselves like the Mafia, that he carried a gun and that he protected their control over their heavily trafficked street corner by threatening to beat or kill competitors. Testimony also connected Carter to two homicides. One witness testified that she first heard a man tell Carter to shoot her boyfriend in the head and then the shot which killed him. Another testified that Carter shot into a car approaching the neighborhood, killing the driver.

After Carter was convicted on all counts, the district court found him responsible for distributing at least 1.5 kilograms of crack cocaine, triggering a base offense level of 38, the highest level for a drug offense. The court increased the offense level to 40 after adding an enhancement for possession of firearms. With this offense level and a criminal history category of II, Carter's sentencing range was 324 to 405 months. The district court sentenced Carter to 405 months.

While serving his sentence Carter made significant steps toward rehabilitation. He renounced his gang affiliation, became a facilitator in a course to help both new

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

inmates adjust to incarceration and those ending their terms prepare for release, worked in the prison chaplain's program, developed a business plan for a future janitor service company, and became involved in the lives of his children.

After the advisory guidelines for crack cocaine offenses were amended, Carter brought a motion under 18 U.S.C. § 3582(c) to reduce his sentence. The United States opposed any reduction because of Carter's violent criminal history. While the district court indicated that his original sentence was appropriate, it decided to reduce his sentence by 40 months due to his rehabilitative progress. Carter appeals, arguing that the district court abused its discretion by giving too much weight to the homicide evidence and insufficient weight to the fairness considerations behind the guideline amendment and to Carter's rehabilitation efforts.

Where a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered . . . the court may reduce the term of imprisonment." 18 U.S.C. § 3582(c)(2). We review a district court's decision to reduce a sentence under § 3582(c)(2) for abuse of discretion. United States v. Burrell, 622 F.3d 961, 964 (8th Cir. 2010). When exercising its discretionary authority to reduce a sentence, "the district court must first calculate the amended guideline range and determine what sentence it would have imposed had the new amended guideline range been in effect at the original sentencing." United States v. Whiting, 522 F.3d 845, 852 (8th Cir. 2008). It should "then consider that determination together with the general sentencing considerations contained in 18 U.S.C. § 3553(a) and, in the exercise of its thus informed discretion, decide whether or not to modify the original sentence previously imposed." Id. (internal quotation marks and brackets omitted).

After determining Carter's sentencing range under the amended guideline, the district court concluded that his original sentence remained appropriate "[f]or the reasons" given by the government. The government had asserted that Carter's

participation "in a ruthless criminal street gang . . .[had] made conditions in areas of South Minneapolis dangerous and unlivable." It had also asserted that Carter's involvement in two killings and his role as a violent defender of the area controlled by the gang meant that his criminal history category of II "greatly under-represents past crimes he has committed and his true propensity to commit future crimes." In the government's view, Carter's use of guns to commit assault and homicide in pursuit of the conspiracy's drug trafficking operations demonstrated that he had "no respect for law while we was on the street and not incarcerated."

Carter argues that the district court improperly weighed the two alleged murders in its reconsideration under § 3582(a). A court may however "rely for sentencing purposes upon a fact that a jury had found underproved (beyond a reasonable doubt)." United States v. Booker, 543 U.S. 220, 251 (2005) (emphasis in original). In determining whether alleged but uncharged or unproven criminal conduct should be considered at sentencing, the district court has "an institutional advantage over appellate courts." Gall v. United States, 552 U.S. 38, 52 (2007). Here, the district court determined that the record, including testimony about Carter's involvement in two killings, indicated that the "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), justified his original 405 month prison sentence.

Carter also contends that the district court failed adequately to consider the fairness component that motivated the amendment to the crack sentencing guideline, quoting from a speech in which Attorney General Eric Holder stated that "the 100-to-1 crack-powder sentencing ratio is simply wrong" and that it "is plainly unjust to hand down wildly disparate prison sentences for materially similar crimes." (June 19, 2009), http://www.justice.gov/ag/speeches/2009/ag-speech-090619.html. The statute itself states that a district court "may reduce the term of imprisonment" of a defendant "who has been sentenced to a term of imprisonment on a sentencing range that has subsequently been lowered." 18 U.S.C. § 3582(c)(2) (emphasis added). It is thus

clear that a reduction is not required, even if authorized. <u>United States v. Johnson</u>, 703 F.3d 464, 470–71 (8th Cir. 2013).  The record here demonstrates that the district court's concern was not focused so much on the amount of crack distributed, but rather on Carter's willingness to use violence to further his gang's drug trafficking activities.

Finally, Carter argues that the district court's 40 month reduction in his prison sentence failed to account fully for his rehabilitation.  The guidelines do now allow a court to "consider post-sentencing conduct of the defendant" when considering a sentencing reduction motion under § 3582(c).  U.S.S.G. § 1B1.10 cmt. n. 1(B)(iii).  Here, the district court elected to reduce Carter's prison sentence by 40 months due to his "post-sentencing rehabilitative progress."  It was under no obligation to reduce it further, and we conclude it did not abuse its discretion by amending Carter's sentence to 365 months.

Accordingly, the district court's order is affirmed.

_____