## CALIFORNIA PRUNE & APRICOT GROWERS, Inc., v. WOOD & SELICK, Inc.

(District Court, S. D. New York. October 16, 1924.)

**1. Sales ⬅|(3) — Contracts, indefinite as to price, rendered definite and binding by subsequent agreement as to price.**

Where defendant contracted with plaintiff for the purchase of prunes, to be shipped during the coming season, "firm at seller's opening prices," while the contracts as made were indefinite as to prices, notification by plaintiff at the beginning of the season of opening prices of all grades, to apply to all the contracts, and its acceptance by defendant, rendered all definite and binding.

**2. Sales ⬅|(4)—Contracts for sale of prunes to be grown held not invalid because of indefiniteness as to sizes.**

In contracts for sale and purchase of prunes to be grown during the coming season reservation by the seller of the right to substitute a percentage of different sizes from those specified *held* a reasonable provision to adapt the contracts to the condition of the crop when matured and not to render them invalid for uncertainty.

At Law. Action by the California Prune & Apricot Growers, Inc., against Wood & Selick, Inc. On motion by defendant for judgment on pleadings. Denied.

Pitkin & Rosensohn, of New York City (Wolcott H. Pitkin, of New York City, of counsel), for plaintiff.

Myers & Goldsmith and Thomas, Houghton & Shepard, all of New York City (Norman M. Behr, of New York City, of counsel), for defendant.

KNOX, District Judge. The pleadings now before the court are so voluminous, and so involved, as to make difficult an intelligent statement of their contents. No little effort has been expended in an attempt to set forth the exact situation in which the parties find themselves after the succession of pleadings, counter pleadings, and motions that have characterized this suit. The maze is so complete that I have determined to attempt little more than to barely decide defendant's motion for judgment upon the pleadings.

Such decision as I shall make will be upon the pleadings, and will in no wise be predicated upon admissions contained in the depositions of persons who are claimed to have spoken upon behalf of the plaintiff. Aside from the question as to whether such admissions are properly before me—the depositions not having been passed upon—I do not now propose to read the extended examination of witnesses who were called upon to testify in support of defendant's contention that plaintiff's contracts are invalid as being in violation of various anti-trust statutes. The question of law and fact upon such issues will have to await the trial.

Under the limitation thus placed upon the scope of the instant motion, it appears that the nub of this case is whether defendant's unfulfilled agreements of May 26, 1920, to purchase and pay for 30 carloads of prunes "firm at seller's opening prices. Said prices

guaranteed against seller's own decline until January 1, 1921," and containing a provision that "seller reserves the right to substitute a larger percentage of 30/40's (the number of prunes to a pound) to 70/80's for smaller sizes," are unenforceable, upon the ground that they lack mutuality or consideration, or that they are within the statutes of fraud of New York or California.

[1] Standing alone, and without reference to any other communications or transaction between the parties, subsequent to May 26, 1920, the agreements appear somewhat indefinite as to price, and as to the substitution of one grade of fruit for another. And, at first blush, it might also appear that plaintiff was under no obligation to fix opening prices.

But whatever may be the apparent shortcomings of the documents of May 26, 1920, the least that properly can be said of them is that, when plaintiff's opening prices were made and communicated to defendant, they constituted an offer by plaintiff to defendant to sell specified quantities of prunes at the prices named. Even though no contract binding upon the defendant had yet come into existence, it was then within the power of defendant to assent to the prices and to accept plaintiff's offer. Under the pleadings as they stand, it would appear that such assent was given and the prices accepted.

On August 11, 1920, plaintiff advised defendant of its opening prices upon the various grades of prunes mentioned in the agreements. At the same time notice was given that such prices would apply to the several agreements of May 26, 1920. Thereafter defendant accepted and paid for five carloads of the fruit at the prices so fixed. While it may be that the agreements of May 26, 1920, if binding at all, are to be regarded as separate contracts (although, from all the facts, this is not entirely a closed question), and that the performance of one or more of them is not to be deemed a partial performance of the others, it does not follow that an assent to the prices named is to be limited to such carloads of fruit as were actually accepted and paid for. The several agreements were substantially the same; their chief point of difference being the time at which various carloads of fruit should be shipped. Under such circumstances, a manifestation of assent to and acceptance of the prices as to a portion of the agreements should be held, I think, as an assent to and acceptance of the prices applicable to all. Such conclusion is not unwarranted when notice is taken of the correspondence passing between the parties.

In September, 1920, a dispute seems to have arisen as to the time of shipment of some of the fruit, and upon the 22d of that month defendant wired plaintiff as follows: "Telegram received. We do not ask early September shipment. Look at contract again."

Upon the same day a reply was dispatched by plaintiff, which reads: "Your contract calls for September shipment and we shipped accordingly. Very sorry but must insist that our draft be taken up as we have lived up to the terms of our contract."

In acknowledging receipt of this telegram, the defendant added: "We stand on contract Sept. shipment. We pay no premiums. Rumor that prices have been reduced. Is this correct?"

On the 24th of September, plaintiff answered the wire just quoted in these words: "Rumor that prices are reduced absolutely incorrect. Very sorry that you are taking the attitude indicated your wire as will have to stand on our contract terms."

Six days later defendant wrote the following letter to plaintiff: "We acknowledge receipt of your telegram and note that you have not as yet reduced your price on prunes, and also note your remarks that you will stand by your contract terms. Our contract calls specifically for September shipment, and nothing is stated as to the first or second half of September. Consequently there is no premium in the matter of making shipment during the month of September. We await your advices."

Nothing further seems to have transpired until October 19th, when defendant sent this wire: "Make no further shipments. Await our letter."

Two days later, after the receipt of a communication from plaintiff, professing not to understand defendant's telegram of the 19th, and calling attention to the readiness to forward certain October shipments, the defendant sent the following message: "Telegram received. We consider you fortunate in having received payment for five cars prunes. We absolutely decline to accept any further shipments for the reason that we consider the contract inequitable the spirit of mutuality absolutely lacking. We think you did not take into consideration world conditions nor crop conditions when making opening prices. When you will make prices in keeping with world and crop

conditions and eliminate the favoritism which you have shown we shall then be very glad to hear from you in the hope that we may find an amicable way of settling the matter."

Other communications containing suggestions of suit, and telling of the positions being assumed by the respective parties, passed to and fro between them. Upon the 26th of October defendant said: "We have asked for a revision of prices and not extension of time or shipment. We are ready to pay drafts just as soon as you will meet our views."

Thereafter, upon November 4 and November 9, 1920, defendant, in offering excuses for the nonpayment of drafts presented by local banking institutions, gave this explanation: "It is not a matter of repudiation of contract, nor cancellation of order, but we have determined that no payment of drafts which are drawn by the California Prune & Apricot Growers, Inc., will be paid until the matter under discussion shall have been reasonably and fairly settled."

All of the foregoing indicates with reasonable clearness that defendant received and assented to plaintiff's opening prices—that it was willing to and did accept the same—thus removing the indefiniteness of the contract. Dissatisfaction was asserted and used as an excuse to breach the contracts, when falling markets made it desirable for a revision of prices to be obtained.

In my opinion, defendant had gone too far to retract from its bargain with the plaintiff. When the market prices of prunes declined, the party standing to lose therefrom should not lightly be permitted to withdraw from a bargain which it desired to have, and with which it was satisfied, so long as performance upon its part was advantageous.

[2] Coming to the reservation by the plaintiff of the right to substitute a larger percentage of 30/40's to 70/80's for the smaller sizes of prunes, it is my belief that this affords no cause for holding the contracts unenforceable. The provision was inserted, I assume, for the benefit of the seller, so as to enable it to dispose of its larger-sized prunes, in case such sizes predominated in the prune crop for 1920.

In construing contracts in which persons seek to cover the contingencies and uncertainties of crops that are yet to mature, provisions reasonably adapted to that end should not be made futile and meaningless because they may contain some element of the "will, wish, or want" of one of the parties. Into each such stipulation the law will inject the requirement of good faith and fair dealing. Better is it that there should be some indefiniteness and uncertainty in contracts such as these than that the growers of commodities, and the merchants who deal in them, should be told that, unless they are able accurately to foretell what nature holds in store, they cannot safely make contracts which will in some degree be dependent upon future events.

As for the defenses based upon the statutes of fraud, it seems reasonably clear that in this case there were sufficient writings to take the contracts from without the statutes.

Defendant's motion for judgment upon the pleadings is denied.