**WASHINGTON LEGAL FOUNDATION,**
Appellant,

v.

**UNITED STATES SENTENCING
COMMISSION, et al.,**
Appellees.

No. 93–5216.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 1, 1993.

Decided Feb. 25, 1994.

Paul D. Kamenar argued the cause for appellant. Also appearing on the briefs were Daniel J. Popeo, Daniel A. Rezneck, and Edward H. Sisson.

Malcolm L. Stewart, Attorney, United States Department of Justice, argued the cause for appellees. Also appearing on the brief were J. Ramsey Johnson, United States Attorney, and Mark B. Stern, Attorney, United States Department of Justice.

Before: MIKVA, Chief Judge, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Appellant Washington Legal Foundation ("WLF") seeks access to the deliberations and documents of a committee advising the United States Sentencing Commission. WLF claims a statutory entitlement under the Federal Advisory Committee Act ("FACA" or "Act"), which requires advisory committees to open their meetings and many of their records to the public. WLF also claims an independent common law right of access to the committee's documents. We find that the committee at issue in this case is exempt from FACA, but we remand to the district court for fuller consideration of the common law claim.

## I. Background

The United States Sentencing Commission ("Sentencing Commission" or "Commission") is an independent agency in the judicial branch, created by Congress to formulate and revise Sentencing Guidelines for the federal courts. 28 U.S.C. § 991, *et seq.* In deciding whether to revise the Guidelines for environmental crimes, the Commission established an Advisory Working Group on Environmental Sanctions ("Advisory Group"). The Advisory Group consists of sixteen government employees and private citizens with expertise in environmental law; it is chaired by two members of the Sentencing Commission. Two of the sixteen committee members are employees of the Department of Justice ("DOJ"). In addition, DOJ's representative to the Sentencing Commission, Roger Pauley, has submitted comments on the Advisory Group's draft guidelines on behalf of DOJ.

The Federal Advisory Committee Act, 5 U.S.C.App. 2, requires, among other things, that the meetings of "advisory committees" be open to the public, *id.* § 10(a)(1), and that "advisory committees" make their documents available for public inspection. *Id.* § 10(b). But not every government-related advisory group is an "advisory committee" under the statute. FACA § 3(2) states:

> The term "advisory committee" means any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee"), which is—
>
> (A) established by statute or reorganization plan, or
>
> (B) established or utilized by the President, or
>
> (C) *established or utilized by one or more agencies,*
>
> in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government. . . .

*Id.* § 3(2) (emphasis added). "Agency" is defined by reference to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1). 5

U.S.C.App. 2 § 3(3). Under the APA, "'agency' means each authority of the Government of the United States," 5 U.S.C. § 551(1), but does not include "the courts of the United States." 5 U.S.C. § 551(1)(B).

WLF brought suit in the district court for equitable relief, seeking an order that the Advisory Group open its meetings and make its documents available to the public. 826 F.Supp. 10. WLF argued that FACA's commands apply to the Advisory Group for two independent reasons: first, because the Advisory Group is "established" by the Sentencing Commission, and because the Commission is an "agency" and not a "court of the United States"; and second, because the Advisory Group is "utilized" by the DOJ, which is also an "agency." Apart from its statutory claims, WLF also argued that the common law right of access to public documents requires the Advisory Group to release certain records of its deliberations for public scrutiny. (WLF also presented another claim, not at issue on this appeal, that the Commission lacked the authority to establish the Advisory Group. The district court dismissed this claim and WLF does not appeal the dismissal.)

The district court rejected all of WLF's arguments and granted summary judgment to the Commission on July 7, 1993. The court held that the Advisory Group is exempt from FACA and that the common law right of access does not extend to the Advisory Group's internal documents. WLF appeals the district court's ruling. This Court has granted WLF's motion for expedited appeal on the ground that the Advisory Group was likely to finish its work before oral argument, thus rendering this appeal moot; but we have denied injunctive relief pending appeal. As of oral argument, the Advisory Group continued to hold closed meetings and continued to maintain, but to deny public access to, the documents requested by WLF. Accordingly, this remains a live controversy, and we proceed to its merits.

## II. Discussion

### A. FACA Claims

The Commission concedes that, given the Advisory Group's composition and activities, it would be an "advisory committee" under FACA *if* it were "established or utilized by one or more agencies." 5 U.S.C.App. 2 § 3(2)(C). WLF claims that the Advisory Group satisfies this provision for two independent reasons. First, it argues that the Advisory Group is "established" by an "agency"—the Sentencing Commission. The success of this argument depends upon the scope of the statutory exemption for "the courts of the United States" from the definition of "agency." Second, WLF claims that the Advisory Group is "utilized" by a different "agency"—the Department of Justice. Although DOJ is undoubtedly an "agency," the issue here is whether it "utilizes" the Advisory Group within the meaning of the Act.

### 1. Is the Sentencing Commission an "Agency?"

■ The first question is whether the Commission is entitled to the exception from FACA's (that is, the APA's) definition of "agency" for "the courts of the United States." The district court held that the "courts" exemption includes the entire judicial branch, of which the Commission is a part. Therefore, because the Advisory Group is "established" solely by the Commission, it is not "established" by an "agency" and it need not comply with FACA.

WLF argues that the district court's interpretation is contrary to the plain meaning of the statute. If Congress had meant to exclude the entire judicial branch, WLF contends, it would have said "the judicial branch of the United States," instead of "the courts of the United States." *See Goldhaber v. Foley,* 519 F.Supp. 466, 480–81 (E.D.Pa. 1981). WLF then refers us to the oft-invoked canon that when the statutory language is plain, a court should look no further. *E.g., Smith v. United States,* — U.S. —, —, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993).

But the district court did look further. Despite WLF's contention that the plain language of the statute makes all else irrelevant, the court relied upon precedent to grant summary judgment to the Commission. Instead of finding a "plain meaning," then, the

court relied upon countervailing *stare decisis* principles disfavoring judicial reinterpretations of statutory provisions. *See, e.g., Patterson v. McLean Credit Union*, 491 U.S. 164, 172–73, 109 S.Ct. 2363, 2370–71, 105 L.Ed.2d 132 (1989); *Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616, 629–30 n. 7, 107 S.Ct. 1442, 1450–51 n. 7, 94 L.Ed.2d 615 (1987); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736, 97 S.Ct. 2061, 2070, 52 L.Ed.2d 707 (1977).

Over the years, virtually every case interpreting the APA exemption for "the courts of the United States" has held that the exemption applies to the entire judicial branch—at least to entities within the judicial branch that perform functions that would otherwise be performed by courts. *See, e.g., In re Fidelity Mortgage Investors*, 690 F.2d 35, 38–39 (2d Cir.1982), *cert. denied sub nom. Lifetime Communities, Inc. v. Administrative Office of U.S. Courts*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983); *United States v. Frank*, 864 F.2d 992, 1013–14 (3d Cir.1988), *cert. denied*, 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989); *Pickus v. United States Bd. of Parole*, 507 F.2d 1107, 1112 (D.C.Cir.1974); *Wacker v. Bisson*, 348 F.2d 602, 608 n. 18 (5th Cir.1965). *Contra Goldhaber*, 519 F.Supp. at 480–81. These decisions rely primarily upon the legislative history of the APA. That history indicates that the term "agency" was supposed to have substantially the same meaning in the APA as in two preexisting statutes: the Federal Reports Act of 1942, ch. 811, 56 Stat. 1079, and the Federal Register Act, ch. 417, 49 Stat. 500 (1935). The Federal Reports Act defined "Federal Agency" as including only entities "in the executive branch," while the Federal Register Act explicitly exempted entities in "the legislative and judicial branches of the Government." Both definitions, then, defined "agency" in terms of the branch of government in which the entity was (or was not) located—neither limited its exemption to "the courts," or any other unit smaller than one of the three branches. *Fidelity Mortgage Investors*, 690 F.2d at 38 (citing *Administrative Procedure Act, Legislative History 79th Cong., 1944–46*, S.Doc. No. 248, 79th Cong., 2d Sess. (1946)). In addition, the APA's Senate Committee report states that "the word 'agency' is defined in the Act 'by excluding legislative, judicial, and territorial authorities.'" *Id.* (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 10 (1945)). In *Fidelity Mortgage Investors*, the Second Circuit took this to mean the APA excludes *all* such authorities—or at least more "judicial authorities" than the courts themselves. That court therefore held that the Judicial Conference, acting as an "auxiliary" of the courts, falls within the APA exemption. *Id.* at 38–39.

This Court has used the same rationale to explain the status of the Probation Service, another entity in the judicial branch. In *Pickus v. United States Bd. of Parole*, 507 F.2d 1107, 1112 (D.C.Cir.1974), we noted that "[t]he exemption of the [Probation Service from the APA] is warranted not by the functions it performs ... but by its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded." *See also Wacker v. Bisson*, 348 F.2d 602, 608 n. 18 (5th Cir.1965) (suggesting that U.S. Commissioner holding extradition hearing is exempt as auxiliary of district court). And, as further support for the district court's interpretation of "courts" as including the entire judicial branch, we have interpreted the APA exemption for "the Congress" to mean the entire *legislative* branch. *See Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1416 n. 15 (D.C.Cir.1985) (Library of Congress not an agency under the APA). Thus, we have held that the Library of Congress (part of the legislative branch but a separate entity from "the Congress," narrowly defined) is exempt from the APA because its provisions do not apply to "the Congress"—that is, the legislative branch.

■■■ Although the argument for applying plain meaning might at first appear compelling, the existence of these contrary precedents is but one more illustration that "plain meaning" is often in the eye of the beholder. What is plain to WLF is not plain to any circuit court that has considered the question. Yet, WLF asks us to rule that these circuits were simply wrong even to consider evidence that "courts" might include auxiliary bodies in the judicial branch. "Plain

meaning" analysis is merely a tool of construction; it does not perform a talismanic function in statutory interpretation. *See, e.g., Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981) (quoting *Boston Sand Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928) (plain meaning rule is "rather an axiom of experience than a rule of law")). A judge should not automatically adopt an apparent meaning without considering whether what at first seems plain to him is also plain as an objective matter.

■ In any event, we need not decide whether the APA excludes the entire judicial branch from the definition of "agency," because Congress tilted the scales in this particular context in the Sentencing Reform Act of 1984 ("SRA"). Congress decided that the Sentencing Commission would not be an "agency" under the APA when it established the Commission as an independent entity in the judicial branch. 28 U.S.C. § 991(a)(1). Section 994(x) of the SRA provides:

> The provisions of section 553 of title 5, relating to publication in the Federal Register and public hearing procedure, shall apply to the promulgation of guidelines pursuant to this section.

28 U.S.C. § 994(x). In *United States v. Lopez,* 938 F.2d 1293, 1297 (D.C.Cir.1991), we held that by explicitly including the APA's notice and comment provisions in the SRA, Congress implicitly recognized that the rest of the APA would not apply to the Commission because it is a part of the judicial branch. The SRA's Senate committee report makes this doubly clear, stating that "[section 994(x)] is an exception to the general inapplicability of the Administrative Procedure Act ... to the judicial branch." *Id.* (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 180–81 (1983)). Thus, the Sentencing Reform Act, as we construed it using the doctrine of *inclusio unius* in *Lopez,* carved out an exemption for the Sentencing Commission from the general dictates of the APA, rendering it not an agency under the APA or, through the cross-reference, under FACA. Because Congress is presumed to know the law, *Cannon v. University of Chicago,* 441 U.S. 677, 696–98, 99 S.Ct. 1946,

1957–58, 60 L.Ed.2d 560 (1979), we may assume that when it enacted the SRA it believed, based on the prevailing caselaw, that the Commission would not be an "agency" under the APA, and that it would therefore not be an "agency" under FACA either. Regardless of whether we would today interpret the APA itself to exempt the Commission as a "court," we need only interpret the Sentencing Reform Act to decide that the Commission is exempt.

In short, we need not interpret the APA at all. Whatever we may think of the reasoning of those underlying cases upon which Congress relied, we are bound by the clear message Congress appended to the SRA. Congress spoke directly to this issue of APA coverage when it created the Sentencing Commission, and it decided that the Commission would not be subject to the provisions of the APA except as specifically enumerated. Because APA coverage determines FACA coverage, Congress must also have intended that the Commission's advisory committees be exempt from FACA.

2. Is the Advisory Group "utilized" by DOJ?

■ Even if the Advisory Group was not "established" by an "agency," WLF argues that it is "utilized" by one—the Justice Department. No one disputes that DOJ is an "agency" under FACA; this time WLF's problem is the word "utilized." The dispute centers around the quantum of control an agency must have over an advisory committee before it can be said to "utilize" that committee. Two members of the Advisory Group are employees of DOJ. In addition, Commissioner Pauley, the DOJ representative on the Commission, has allegedly played an important role in the Group's decision-making. Nonetheless, the district court held as a matter of law that this involvement was insufficient to invoke FACA.

We agree. The word "utilized" in FACA requires more than WLF has alleged. It is a stringent standard, denoting something along the lines of actual management or control of the advisory committee. This court, interpreting a recent decision of the Supreme Court, has held that " 'utilized' encompasses

a group ... so 'closely tied' to an agency as to be amenable to 'strict management by agency officials.'" *Food Chemical News v. Young*, 900 F.2d 328, 332–33 (D.C.Cir.), *cert. denied sub nom. Food Chemical News v. Benson*, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 99 (1990) (citing *Public Citizen v. United States Dept. of Justice*, 491 U.S. 440, 457, 461–62, 109 S.Ct. 2558, 2568, 2570, 105 L.Ed.2d 377 (1989)).

There is no evidence that the Advisory Group's relationship to DOJ fits this description. The Advisory Group advises the Sentencing Commission, and is chaired by two members of the Commission. It exists to make recommendations to the Commission, which presumably will consider those recommendations in preparing new Guidelines for environmental crimes. The Commission manages and controls its own Advisory Group. On the other hand, DOJ, which will enforce these new Guidelines, has every reason to be interested, and to participate, in the Advisory Group's deliberations. Most likely, through its members on the Advisory Group and through Commissioner Pauley, DOJ will exercise significant influence on those deliberations and on the ensuing recommendations. But influence is not control. The Advisory Group answers to the Commission, not to DOJ; ultimately, then, DOJ no more controls the Advisory Group than it does the Commission itself. And the Commission, as an independent agency in the judicial branch, is outside the reach of DOJ.

We hold that the Advisory Group is not "utilized" by DOJ. Because it is neither "established [n]or utilized by one or more agencies," the Advisory Group is not subject to FACA.

B. *Common Law Document Access Claim*

■ WLF claims that the common law right of access to public documents entitles it to inspect the Advisory Group's records, even if FACA does not. Before the district court, WLF identified five broad categories of documents—including internal notes and memoranda, preliminary drafts of proposed guidelines, internal discussion memoranda, copyrighted scholarly research, and public com-ments on publicly released draft guidelines—that it would like to inspect.

The district court rejected the claim in its entirety, noting that the common law right extends only to "public records," not to every document contained in government files. *Schwartz v. Department of Justice*, 435 F.Supp. 1203, 1204 (D.D.C.1977), *aff'd*, 595 F.2d 888 (D.C.Cir.1979). The court held that the documents sought by WLF were not public records, but "pre-decisional materials upon which a final recommendation to the Commission may develop."

Even if these records were "public records" covered by the common law right, the government could still avoid disclosure if its "specific interests favoring secrecy outweigh the general and specific interests favoring disclosure." *Mokhiber v. Davis*, 537 A.2d 1100, 1108 (D.C.1988); *see also Brewer v. Watson*, 71 Ala. 299, 304–06 (1882) (state tax agency may withhold documents "if disclosure would prove detrimental to the public interest"); *United States v. Doe*, 730 F.2d 1529, 1532 (D.C.Cir.1984) (referring to common law in applying balancing approach under Federal Youth Corrections Act). Employing such a balancing test, the district court held that the government has a strong interest in preventing public release of the Advisory Group's pre-decisional records, at least in part to avoid chilling the "frank exchange of ideas and opinions" in which the Advisory Group is designed to engage. *See Dudman Communications Corp. v. Department of Air Force*, 815 F.2d 1565, 1567 (D.C.Cir.1987) (discussing analogous FOIA exemption for deliberative materials). The court held that the government's interest outweighs WLF's need for the material—particularly in light of the fact that WLF ultimately will have access to and an opportunity to comment upon any proposed rules resulting from the Advisory Group's deliberations.

■ We think the district court applied the correct general methodology. That is, in determining whether a public right of access exists a court should first decide whether the document sought is a "public record." If the answer is yes, then the court should proceed to balance the government's interest in keep-

ing the document secret against the public's interest in disclosure. Note that this balancing test should not be an abstract inquiry, but should focus on the specific nature of the governmental and public interests as they relate to the document itself, as well as the general public interest in the openness of governmental processes. *See Mokhiber,* 537 A.2d at 1108. When a trial court engages in an appropriate inquiry, its conclusions are entitled to deference. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570 (1978).

■ The district court erred, however, in making its decision without knowing what documents the Advisory Group had in its possession. WLF argues that the court should have ordered, at a minimum, that the Group produce a list of documents (a so-called "*Vaughn* index") so that the court could decide which, if any, were subject to the common law right of access. *See Vaughn v. Rosen,* 484 F.2d 820, 827–28 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (prescribing indexing procedures in FOIA case); *Loigman v. Kimmelman,* 102 N.J. 98, 505 A.2d 958, 964–66 (1986) (requiring *Vaughn* index in common law right of access case). We agree. One important reason for the deference due a district court in deciding whether to order a governmental body to open its files is that the district court presumably has a greater understanding of the precise contents of those files than does an appellate court. When, as in this case, it appears that the district court did not familiarize itself with the documents at issue, substantial deference is not warranted. Before finding that WLF's entire request was beyond the scope of the common law right, the court should have analyzed each category of document requested and, if a category is reasonably likely to contain publicly accessible documents, each document within such category, to determine whether any of those documents might in fact be subject to public access. An appropriate way to undertake this analysis would be to order a *Vaughn* index.

■ We are well aware that a *Vaughn* index requires a significant expenditure both of judicial resources and of the parties' time

and money. Thus, a court should not order an index when the non-applicability of the common law right is apparent without one. In this case, the district court appeared confident from the nature of the Advisory Group and the terms of WLF's document request that none of the requested materials would be subject to public access under the common law. But without knowing precisely what records were at issue, we are not so confident. Concededly, documents possessed by an advisory body cannot be subject to a blanket common-law right, or else FACA § 10(b) would be wholly superfluous. But we are unwilling to hold that *no* documents retained by an advisory group can ever be subject to the common law right of access. Neither can we say confidently, knowing no more than the general categories of documents named by WLF, that none of these are public records that could survive the applicable balancing test. Accordingly, we reverse and remand to the district court for further findings on the issue of whether any of the documents WLF has requested are subject to the common law right of access. The court should assess separately each category of documents requested to determine whether part or all of that category might be composed of public records. If there is any legitimate question as to any or all of the categories, then the court should order a *Vaughn* index to evaluate the individual documents within these categories. For any and all documents determined to be public records, the court should then balance the government's interest in secrecy against the public's interest in disclosure with reference to the contents of the particular documents at issue (as reflected in the *Vaughn* index) to determine whether WLF has a common law right of access to those documents.

## III. Conclusion

We find that the district court correctly held that the Sentencing Commission's Advisory Working Group on Environmental Sanctions is not subject to FACA, as it is neither "established" nor "utilized" by an "agency." Therefore, the Advisory Group may lawfully close its meetings to the public. But we find that the district court did not evaluate suffi-

ciently WLF's request for the Advisory Group's documents under the common law right of access to public records. Accordingly, we remand this claim to the district court for a closer look. The judgment of the district court is

*Affirmed in part, reversed in part, and remanded.*